UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAURA VALENTINA LEON-VIZCAINO,
individually and on behalf of all others
similarly situated,

              Plaintiff,

          -against-

NY GEORGE'S CATERING CORP., d/b/a
MAMA PISCO KITCHEN BAR and
CARLOS ANDRES SERNA, jointly and
severally

              Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
25 CV 2902 (EK) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On May 24, 2025, plaintiff Laura Valentina Leon-Vizcaino commenced this action against defendants NY George's Catering Corp., d/b/a Mama Pisco Kitchen Bar, and Carlos Andrews Serna, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), §§ 190 *et seq.*, and N.Y. Comp. Codes R. & Regs. tit.12 § 142–2.2. (Dkt. No. 1 ("Compl.")). Presently before the Court is plaintiff's motion for conditional certification of a collective action. (Dkt. No. 19 ("Mot.")). For the reasons set forth below, the Court respectfully recommends that plaintiff's motion for conditional certification be denied.

FACTUAL BACKGROUND

According to the Complaint and plaintiff's declaration submitted with the present motion, defendant Serna owned and operated a Peruvian restaurant, NY George's Catering Corp., d/b/a Mama Pisco, where plaintiff worked as a waitress from May 22, 2022 to December 31, 2022, and as an assistant manager from January 1, 2023 to May 31, 2025. (Compl. ¶¶ 1, 2, 11, 20; Dkt.

No. 23-1 ("Leon-Vizcaino Decl.") ¶¶ 3, 7).  Plaintiff alleges that, as a waitress, she was paid $10 an hour and received tips and that, as an assistant manager, she was paid $600 per week and performed non-tipped tasks 40% of the time and received tips from customers for other tasks. (Compl. ¶¶ 22-24; Leon-Vizcaino Decl. ¶¶ 9-11).   Throughout her employment, plaintiff alleges she typically worked 6 days per week, averaging 63 hours per week.[1]  (Compl. ¶¶ 25-27; Leon-Vizcaino Decl. ¶¶ 12-14).  Plaintiff alleges she did not receive overtime compensation despite working greater than 40 hours per week.  (Compl. ¶¶ 28, 30; Leon-Vizcaino Decl. ¶ 17).   She contends that at least 2 days per week she worked at least 11 hours but she did not receive spread-of-hours pay.  (Compl. ¶ 33).  She also alleges she was not provided with wage statements or notices.  (Compl. ¶ 32).

As part of the motion for collective certification, plaintiff submits the declaration of opt-in plaintiff Jorge Ulloa-Gonzales, another former employee of Mama Pisco.  (Dkt. No. 19-2 ("Ulloa-Gonzales Decl.")).  Mr. Ulloa-Gonzales declares that he worked for defendants from September 1, 2022 to August 31, 2025 as a cook.  (Id. ¶¶ 3, 7, 8).  During that time, Mr. Ulloa-Gonzales declares he worked 6 days per week for an average of between 55 and 58 hours per week.  (Id. ¶¶ 10, 11, 14).  He claims he was paid $15 per hour from September 1, 2022 to February 28, 2023, and then $1,000 per week from March 1, 2023 to August 31, 2025.  (Id. ¶ 13).  He claims that during this time, he was not paid overtime wages.  (Id. ¶ 14, 16).  He does not declare defendants failed to pay him spread-of-hours pay or that he was not provided adequate wage statements or notices.

---

[1] Plaintiff alleges that "[o]n average, [she] worked 60 hours each week."  (Compl. ¶ 27).  However, she also alleges she worked 12 hours per day on Tuesdays, 11 hours per day on Thursdays, and 10 hours per day Wednesdays and Fridays through Sundays.  (Id. ¶ 26).  Thus, she alleges she worked 63 hours per week on average.

2

Both plaintiff Leon-Vizcaino and Mr. Ulloa-Gonzales state that they have spoken with other employees and they believe the "failure to pay overtime wages is widespread throughout the company, and occurs across various job titles."  (Leon-Vizcaino Decl. ¶¶ 18-20; Ulloa-Gonzales Decl. ¶¶ 17-19).

Plaintiff asserts individual causes of action for unpaid overtime under the FLSA and NYLL, unpaid minimum wage under the NYLL, and failure to pay spread-of-hours pay pursuant to the NYLL.  She also brings collective action allegations on behalf of "[a]ll persons employed by defendants…who worked as cooks, waitresses, bartenders, busboys, assistant managers, and all other employees who were not paid overtime wages for at least one week in which they worked in excess of 40 hours." [2]  (Mot. at 1–2).   She does not bring minimum wage, spread-of-hours, wage notice, or wage statement claims on behalf of the collective.

DISCUSSION

I.    Legal Standards

A.  Collective Action Certification Process

The standard for conditional certification of a collective action under the FLSA is "considerably more liberal than class certification under Rule 23."  Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007).  This conditional certification analysis, occurring before significant discovery ensues, requires only "a 'modest factual showing that [plaintiffs] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'"  Gonzalez v. Wicked Taco LLC, 764 F. Supp. 3d 77, 95 (E.D.N.Y. 2025)

---

[2] Plaintiff's definition of the collective in the motion for collective certification differs from that proposed in the Complaint.  The Complaint proposes this definition: "All persons employed by Defendants, at any time from April 30, 2019 to April 30, 2025, through the entry of judgment in this case (the 'Collective Action Period'), who worked as waitresses, bartenders, busboys, assistant managers, and all other employees who were not paid the applicable minimum wage or overtime wages in weeks in which they worked in excess of 40 hours in a week (the 'Collective Action Members')."

(quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).  See Costello v. Kohl's Illinois, Inc., No. 13 CV 1359, 2014 WL 4377931, at *4 (S.D.N.Y. Sept. 4, 2014) ("The question presented is not simply whether or not Plaintiffs were subject to a common plan or policy, but, rather, whether or not they were victims 'of a common policy or plan *that violated the law*'" (emphasis included and quotation omitted)).  "A named plaintiff is not required to show 'an actual FLSA violation' at this stage, but rather only that 'a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs.'"  Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (quoting Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354 (E.D.N.Y. 2007)).  Notably, "'[t]he sole consequence of conditional certification is the sending out of court-approved written notice to employees;'" it does not create a class with independent legal status.  Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 55, 75 (2013)).

To determine whether a collective should be certified in a FLSA case, courts in this Circuit engage in a two-step analysis.  Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016).  At the first step, conditional certification, the district court determines whether "'to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred.'"  Gonzalez, 764 F. Supp. 3d at 94–95 (quoting Myers, 624 F.3d at 555).  Plaintiffs and opt-in plaintiffs must "share a similar issue of law or fact material to the disposition of their FLSA claims" to be conditionally certified.  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020).  The second step of the process takes place after discovery, allowing the Court to look at the evidentiary record to "make[] a factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, but if they are not, the [collective] is decertified."

4

Puglisi, 998 F. Supp. 2d at 100 (quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2014)).  Here, plaintiff moves this Court for conditional certification. Therefore, "the Court need only make a preliminary determination whether the Plaintiffs are 'similarly situated.'"  Romero v. H.B. Automotive Grp., Inc., No. 11 CV 386, 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012).

Plaintiffs can satisfy their burden at the first step through an affidavit containing hearsay. Iriarte v. Redwood Deli & Catering, Inc., No. 07 CV 5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) (granting conditional certification where plaintiff submitted an affidavit stating other employees were subject to the same wage practices, though plaintiff had not identified other opt-in plaintiffs).  See also Chang Yan Chen v. Lilis 200 West 57th Corp., No. 19 CV 7654, 2021 WL 135248, at *4 (S.D.N.Y Jan. 14, 2021) (finding "the Court may consider hearsay in deciding a motion for conditional certification").  Although the burden is minimal, plaintiffs must provide more than just unsupported assertions.  Myers, 624 F.3d at 555.  See also Chang Yan Chen, 2021 WL 135248, at *2–4 (finding plaintiff provided "barely [enough] to warrant conditionally certifying a collective of deliverymen at both restaurants" by providing other employees' schedules, their pay frequency and tip participation, and allegations of conversations regarding compensation, but did not provide enough information to show that the wage practices spread across other non-exempt job titles).  Mere "anecdotal hearsay" will not suffice.  Barfield v. N.Y.C. Health and Hospitals Corp., No. 05 CV 6319, 2025 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying collective action certification where plaintiff "present[ed] nothing but limited anecdotal hearsay to suggest that there is a widespread practice" violating FLSA).

B. FLSA and NYLL Exemptions

The FLSA requires employers to compensate covered employees for all work performed, including minimum wage, overtime, and spread-of-hours pay, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); see also Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 522 (S.D.N.Y. 2015). Employees have a private right of action to recover compensation from an employer violating the FLSA and may do so via a collective action on behalf of themselves and other employees similarly situated. Carabajo v. APCO Insulation Co., Inc., No. 22 CV 4175, 2023 WL 3931618, at *3 (E.D.N.Y. June 9, 2023) (citing 29 U.S.C. § 216(b)).

Although the FLSA requires that most employees be paid overtime compensation, certain categories of employees are exempt from this requirement. One such category of exempted employees is individuals employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. 213(a)(1). Congress left the definition of "executive" and "administrative" employees to the Department of Labor, which, through FLSA's implementing regulations, classifies employees as "executives" if (1) they are "[c]ompensated on a salary basis;" (2) their "primary duty is management of the enterprise ... or of a customarily recognized department or subdivision thereof;" (3) they "customarily and regularly direct[ ] the work of two or more other employees;" and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." Ahmed v. T.J. Maxx Corp., 103 F.Supp.3d 343, 345–46 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 541.100(a)(1)–(4)); Indergit v. Rite Aid Corp., No. 08 CV 9361, 2010 WL 2465488, at *2 (S.D.N.Y. June 16, 2010). The Department of Labor categorizes an employee as

6

"administrative" if her "'primary duty [is] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and include[] the exercise of discretion and independent judgment with respect to matters of significance.'" Romero, 2012 WL 1514810, at *7 (quoting Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 630 (E.D. Cal. 2009) (internal quotations omitted)).  An employee's concurrent performance of exempt and nonexempt duties does not necessarily disqualify her from the exemption.  Ahmed, 103 F. Supp. at 351.  The question of whether the exemption applies is a mixed question of law and fact.  Id.

The determination of whether the executive or administrative exemption applies is not appropriate at the conditional certification stage, but the possibility that such exemptions exist may be relevant to an analysis of whether employees are similarly situated.  Romero, 2012 WL 1514810, at *6 (finding that addressing the merits of a FLSA exemption is not appropriate at the conditional certification stage but determining the possible existence of an exemption should be made when deciding conditional certification).  The Second Circuit has held that, in cases involving FLSA exemptions, plaintiffs can show they are similarly situated to the proposed collective only "by making some showing that 'there are other employees…who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Myers, 624 F. 3d at 555 (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008)).  "'Where a collective action contains a mix of employees, some of whom are exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate.'" Batten v. Citi Gen. Hardware, Inc.,

No. 24 CV 2039, 2025 WL 2751149, at *3 (E.D.N.Y. Sept. 29, 2025) (quoting Romero, 2012 WL 1514810, at *12). Courts often deny conditional certification where a FLSA exemption may apply to the named plaintiff but not to the opt-in plaintiffs. E.g., Romero, 2012 WL 1514810, at *14 (holding that "because putative opt-ins are not similarly situated with respect to their job duties or exempt-status, [the Court] cannot conditionally certify the whole class as it stands."); Batten, 2025 WL 2751149, at *5 (denying conditional certification where FLSA Motor Carrier Exemption might apply to plaintiff but might not apply to all collective action members). Cf. Iglesias-Mendoza, 239 F.R.D. at 368 (conditionally certifying a collective action where all employees were covered by the same exemption).

II.    Plaintiff's Motion for Conditional Certification Should be Denied

At this preliminary certification stage, plaintiff has not cleared her burden of showing she is "similarly situated" to the potential opt-in plaintiffs.

Plaintiff seeks to conditionally certify a collective of:

> All persons employed by Defendants, at any time from [three years preceding the Court's Order granting conditional certification] to May 24, 2025, through the entry of judgment in this case (the "Collective Action Period"), who worked as cooks, waitresses, bartenders, busboys, assistant managers, and all other employees who were not paid overtime wages for at least one week in which they worked in excess of 40 hours (the "Collective Action Members").

(Mot. at 1–2). During the entire proposed period, spanning three years prior to any Order from the district court granting conditional certification, plaintiff was an assistant manager, spending 40% of her time performing non-tipped tasks such as training employees, setting employee schedules, responding to customer complaints, taking catering orders, creating menu specials, ordering food products, supporting the head restaurant manager, and scheduling the restaurant for private parties. (Id. at 3). As assistant manager, she was paid a salary of $600 per week and

8

received tips for 60% of her work.  (Id. at 2).  Prior to that period, plaintiff worked as a waitress until she was promoted on January 1, 2023.  (Id. at 2).  As a waitress, she waited tables, took customer orders, served food, and at times, worked as a bartender providing alcoholic drinks for customers.  (Id.)  During this time, she was paid $10 per hour and received tips from customers.  (Id.)

Plaintiff also submitted the declaration of Jorge Ulloa-Gonzales.  (Dkt. No. 23-2).  Mr. Ulloa-Gonzales worked for defendants as a cook from September 1, 2022 to August 31, 2025.  (Id. ¶¶ 3, 8).  His job duties included preparing food items, cooking food, and cleaning the workstation.  (Id. ¶ 8).  He also claims he spent 30% of his time performing managerial tasks, though he does not expand upon that point.  (Id.)  From September 1, 2022 to February 28, 2023, Mr. Ulloa-Gonzales was paid $15 per hour, and from March 1, 2023 to August 31, 2025, he was paid $1,000 per week regardless of how many hours he worked.  (Id. ¶ 13).

Defendants argue that conditional certification is inappropriate because plaintiff's role as an assistant manager may implicate potential FLSA exemptions and because plaintiff's proposed collective would involve differing compensation structures.  (Dkt. No. 22 at 2, 6).  Defendants contend that the proposed collective definition is "sweeping" and covers groups of employees with no similar practice linking them.  (Id.)  Moreover, plaintiff does not dispute that she may be covered by the FLSA exemption or, alternatively, that some proposed collective members are similarly exempted.  (See generally Dkt. No. 23 ("Reply")).

The Court agrees that plaintiff does not, at this stage, provide a sufficient factual showing that she and other employees were similarly situated with respect to a common policy or plan that violated the law.  Plaintiff may very well have been subject to the FLSA executive or administrative exemption when other employees in the proposed collective were not.  In fact, she

concedes that she is not "an ordinary employee," because as an assistant manager, she had "a much greater view of the operations and pay practices of Defendants." (Reply at 5). The fact that she performed both managerial and non-managerial work does not necessarily preclude a finding that plaintiff is covered by the exemption.

Moreover, although plaintiff and Mr. Ulloa-Gonzales claim that many other employees have been denied overtime pay, nothing in plaintiff's submissions supports this anecdotal hearsay enough to find plaintiff was similarly situated to other employees. The only support plaintiff provides is a supposed work schedule attached to her declaration which lists several individuals. (Leon-Vizcaino Decl. at 4–7). Notably, Mr. Ulloa-Gonzales is not included on the schedule. Plaintiff does not state whether she created this work schedule or if it was made by defendants. The exhibit does not list employee job titles or even allege that the individuals were employed by defendants. Although it lists where employee were stationed—either at the bar, serving, or bussing—the only tasks listed on the schedule are "preparation opening and closing," "break," "busiest time at the restaurant," and an unmarked category that spans 88 combined hours throughout the employees' schedules. (Id. at 7 (quotations translated from Spanish)).[3] Plaintiff provides no insight into whether the listed employees are putative opt-ins, how the listed employees were paid, or whether they were similarly denied overtime. Plaintiff fails to state whether this was a typical workweek. The schedule is also undated, and the Court cannot therefore determine if this workweek occurred before or after plaintiff's promotion to assistant manager. This work schedule does little, if anything, to show plaintiff is similarly situated to the putative collective in pay structure, job duties, or FLSA exemption status.

---

[3] The original categories were: "preparación apertura y cierre," "break," and "momentos de más movimiento del restaurante."

10

In consequence, there is no factual nexus between the putative collective action members' potential claims and plaintiff's claims and the Court respectfully recommends that the district court deny plaintiff's motion for conditional certification.

CONLCUSION

For the reasons set forth above, the Court respectfully recommends that the district court deny plaintiff's motion for conditional certification and that plaintiff pursue her claims alone.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       February 26, 2026

/s/ Peggy Cross-Goldenberg
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York